# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HAIGHT, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 HUNTER J. ISRAEL**
**United States Army, Appellant**

ARMY 20131054

Headquarters, Fort Carson
Timothy Grammel, Military Judge
Lieutenant Colonel Stephanie D. Sanderson, Staff Judge Advocate

For Appellant: Captain Payum Doroodian, JA; Mr. Gregory M. Gagne (on brief).

For Appellee: Colonel Mark H. Sydenham, JA; Major A.G. Courie III, JA; Major Daniel D. Derner, JA; Captain Samuel E. Landes, JA (on brief).

18 December 2015

--------------------------------
OPINION OF THE COURT
--------------------------------

WOLFE, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of two specifications of making a false official statement, one specification of sodomy with a child between the ages of 12 and 16 years, and two specifications of obstruction of justice, in violation of Articles 107, 125, and 134, 10 U.S.C. §§ 907, 925 and 934 (2006; 2012) [hereinafter UCMJ].[1] The panel sentenced appellant to a dishonorable discharge, confinement for ten years, and forfeiture of all pay and allowances. The convening authority approved the adjudged sentence.

---

[1] Appellant was acquitted of one specification of providing alcohol to a minor in violation of Article 134, UCMJ.

ISRAEL—ARMY 20131054

This case is before us pursuant to Article 66, UCMJ. Appellant raises four assignments of error, none of which merits detailed discussion or relief.[2] Appellant raises several matters under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), one of which merits discussion and relief. Additionally, we identify one issue that warrants discussion, but not relief.

## BACKGROUND

In 2011 Miss KLM, a twelve-year-old girl, lived in the same apartment complex as appellant in Colorado Springs. Miss KLM alleged a sexual relationship with appellant that involved her performing oral sex on him on multiple occasions. When questioned by the Criminal Investigation Command (CID) while deployed to Afghanistan in the summer of 2012, appellant admitted one instance of oral sex with Miss KLM that occurred at his residence in late May of 2011. When asked whether he knew how old she was, appellant responded "I thought she was 14, I knew she was a minor." When asked to explain what Miss KLM looks like, appellant responded with a detailed estimation as to her breast size, height, weight, and manner of dress.

Shortly thereafter, appellant returned to the United States from Afghanistan and was again interviewed by CID. Appellant consented to CID's review of his laptop and provided a laptop for CID's examination that he claimed was his own. A few weeks later, appellant's girlfriend called CID stating that the laptop was in fact hers. She further stated that appellant had instructed her to hide the hard drive of appellant's laptop in the apartment of Ms. Tammy Kohn, appellant's neighbor.[3] Agents from CID searched Ms. Tammy Kohn's apartment and found appellant's hard

---

[2] The court-martial found appellant guilty of sodomy with a child under the age of 16 years with exceptions and substitutions. The court-martial excepted out the language "between on or about 1 October 2011 and on or about 18 March 2012, on divers occasions." Consistent with our superior court's decision in *United States v. Walters,* 58 M.J. 391 (C.A.A.F. 2003), the military judge properly instructed the panel to specify the factual basis for the guilty finding. In accordance with the military judge's instructions, the panel substituted in the language "on or about May 2011, on one occasion in his residence." In his brief to this court, appellant stated that "[i]t is fairly obvious that the panel based its findings solely on appellant's sworn statement" which admitted sodomy with Miss KLM in May of 2011. We agree and therefore find we are fully able to perform our responsibilities under Article 66, UCMJ. We similarly agree with the military judge that the variance of just over four months was not fatal.

[3] Ms. Kohn was not unknown to CID. During the course of the investigation she identified herself as an attorney representing appellant and provided CID with an audio recording which contained a purported recantation of Miss KLM's allegations against appellant. At trial, both parties conceded that Ms. Kohn was not an attorney.

drive and cell phone in the specific location where appellant's girlfriend had stated they would be located. A forensic review of the media identified revealing and suggestive photos of Miss KLM in various stages of undress and nudity. Additionally, the examination revealed various messages between Miss KLM and appellant, some of a sexually suggestive nature.

Appellant was again questioned by CID. He denied any contact with Miss KLM and stated he did not know how his property ended up in Ms. Kohn's apartment.

## DISCUSSION

### a. Specific Request for a Dishonorable Discharge

Appellant's trial defense counsel during his sentencing argument to the panel specifically requested that appellant receive a dishonorable discharge, stating:

> [W]e are going to ask for a dishonorable discharge
> because Private Israel doesn't deserve to be in the military
> anymore. It's pretty obvious -- that's clear. He knows it.
> He accepts it. . . . He wants that dishonorable discharge.
> The fact that he acknowledges that he deserves a
> dishonorable discharge is a sign of rehabilitative potential
> and it is a sign that he does not need a long and lengthy
> confinement sentence to learn that lesson.

In a detailed colloquy with the military judge following his sentencing argument on behalf of appellant, counsel stated that it was a tactical decision to request a dishonorable discharge. Appellant concurred and stated that he had agreed to his counsel's argument.

The Military Judge's Benchbook states that requesting a dishonorable discharge in a sentencing argument is prohibited. *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para. 2-7-27 n.1 (1 Jan. 2010). ("It is improper for defense counsel to argue for a discharge or dismissal against the client's desires and if a dishonorable discharge is possible, the defense counsel may only argue for a bad-conduct discharge"). However, we find that in a case such as this, where an accused specifically consents to such an argument, the trial defense counsel who makes the tactical decision to request a dishonorable discharge commits no error. *See United States v. Weatherford*, 19 U.S.C.M.A. 424, 425, 42 C.M.R. 26, 27 (1970) (As part of his right to address the sentencing authority, an accused "may ask for one kind of punishment to the exclusion of other permissible penalties"); *United States v. Bouteiller*, 44 C.M.R. 695, 696 (A.C.M.R. 1971) (Advocacy for punitive discharge is improper unless "the accused desires a *dishonorable* or bad-conduct discharge") (emphasis added). Of

3

course, as in this case, a defense counsel who intends to ask for any punitive discharge must "make a record that such advocacy is pursuant to the accused's wishes." *United States v. Dresen*, 40 M.J. 462, 465 (C.M.A. 1994) (citing *United States v. Lyons,* 36 M.J. 425 (C.M.A. 1993)); *see United States v. Quick*, 59 M.J. 383, 385-86 (C.A.A.F. 2004).

This case is distinguishable from those cases where appellant consented to an argument for a discharge generally, but did not specifically consent to an argument for a dishonorable discharge. *See e.g. United States v. McMillan*, 42 C.M.R. 601 (A.C.M.R. 1970); *United States v. Shields*, 40 C.M.R. 844 (A.B.R. 1969). Our review of precedent fails to reveal any case in which a court determined that it was improper for a defense counsel to argue for a dishonorable discharge in accordance with the specific desires of the accused. Moreover, when an accused expresses to his counsel the specific desire that his counsel argue for a dishonorable discharge, for this court to nonetheless prohibit such an argument would be to substitute our tactical judgment for that of an accused and his counsel.[4]

Accordingly, if a dishonorable discharge is an authorized sentence, a defense counsel may argue for a dishonorable discharge provided that the accused specifically consents to such an argument.

### b. Unreasonable Multiplication of Charges for Findings

Appellant was convicted of two violations of Article 107, UCMJ, for making false statements to CID. Both statements arose out of a single interview. At trial, the proof regarding the two statements was provided in a single narrative answer without any attempt to distinguish that the statements were made at different times during the interview or with different purposes of deception. *See United States v. Wright*, 44 M.J. 739 (Army Ct. Crim. App. 1996); *see generally United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001). Although the military judge merged the specifications for sentencing, in exercising our duty to approve only those findings

---

[4] However, Judge Ferguson, in his dissent to *Weatherford*, argued exactly for such a result. *Weatherford*, 19 U.S.C.M.A. 427-28, 42 C.M.R. at 29-30 ("I do not believe that there is ever an 'appropriate case' where a defense counsel may urge the court to impose a punitive discharge upon his client, even when the argument is designed to persuade the court not to sentence the accused to a period of confinement." Judge Ferguson further argued that even though "the accused requested and even demanded that his counsel argue for his punitive separation" that this factor, was in his opinion, "a difference without a distinction.") (Ferguson, J., dissenting).

that "should be approved" under Article 66(c),[5] we will merge the two specifications for findings, and provide relief in our decretal paragraph.

## CONCLUSION

Specifications 1 and 2 of Charge I are consolidated into a single specification, numbered Specification 1 of Charge I, to read as follows:

> In that Private E1 Hunter J. Israel, U.S. Army, did, at or near Fort Carson, Colorado, on or about 21 August 2012, with intent to deceive, make to Special Agent E.L.H., an official statement, to wit: "I never had sexual contact with Ms. K.L.M" and "I do not know how Ms. T.K. came into possession of my laptop hard drive or my cell phone," or words to that effect, which was totally false, and was then known by the said accused to be so false.

The finding of guilty of Specification 1 of Charge I, as so amended, is AFFIRMED.  The finding of guilty to Specification 2 of Charge I is set aside and that specification is DISMISSED.   The remaining findings of guilty are AFFIRMED.

Reassessing the sentence on the basis of the entire record, and applying the principles of *United States v. Sales,* 22 M.J. 305, 308 (C.M.A. 1986) and the factors set forth in *United States v. Winckelmann,* 73 M.J. 11, 15–16 (C.A.A.F. 2013), we are confident the panel would have adjudged the same sentence.  The military judge, in merging the specifications of Charge I for sentencing, removed any taint that may have prejudiced appellant.  All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision are ordered restored.

Senior Judge HAIGHT and Judge PENLAND concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court

---

[5] We note that this issue was forfeited at trial, and we do not find error on the part of the military judge.  *See United States v. Butcher,* 56 M.J. 87, 93 (C.A.A.F. 2001). We therefore reach this matter only because of our "highly discretionary power" under Article 66(c).  *Id.*